**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                        )
                                        )
JACOB GROGAN, PAUL JONES, TERRANCE      )
LEE, and TREAVON WHITAKER,              )
individually and on behalf of all       )
others similarly situated,              )
                                        )
                    Plaintiffs,         )
                                        )
v.                                      )         Civil Action
                                        )         No. 19-11531-PBS
ALL MY SONS BUSINESS DEVELOPMENT LLC;   )
ALL MY SONS MOVING AND STORAGE OF       )
RHODE ISLAND LLC; and CHRIS GENERALE,   )
                                        )
                    Defendants.         )
_____)
```

**MEMORANDUM AND ORDER ON CROSS-MOTIONS**
**FOR SUMMARY JUDGMENT**

August 4, 2021

Saris, D.J.

**INTRODUCTION**

Plaintiffs bring this class action against All My Sons,[1] alleging violations of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148 (Count I), and the Massachusetts Minimum Wage Law, Mass. Gen. Laws ch. 151, § 1 (Count II).  The Court has certified the following two classes:

---

[1] The named defendants are All My Sons Moving and Storage of Rhode Island LLC, All My Sons Business Development LLC, and Chris Generale, the President (collectively "All My Sons Moving").

1

(1)  All Drivers employed by All My Sons Moving who performed work from an office location in Massachusetts, from April 26, 2016 to the present.

(2)  All Helpers employed by All My Sons Moving who performed work from an office location in Massachusetts, from April 26, 2016 to the present.

The core claim for both classes is that All My Sons required them to work significant hours "off the clock" under uniform company-wide timekeeping and compensation policies.

Before the Court now are cross-motions for partial summary judgment.  All My Sons moves for summary judgment on the Wage Act claim (Count I).  Plaintiffs move for partial summary judgment related to the Minimum Wage Law claim (Count II).  For the following reasons, the court **ALLOWS IN PART** and **DENIES IN PART** All My Sons' motion (Dkt. 46) and **ALLOWS IN PART** and **DENIES IN PART** Plaintiffs' motion (Dkt. 50).

## FACTUAL BACKGROUND

Except where stated otherwise, the following facts are undisputed.

All My Sons operates a moving and storage company with dozens of locations throughout the United States.  Plaintiffs are individuals employed as Drivers and/or Helpers out of the Massachusetts locations of All My Sons.[2]  Drivers are, as expected,

---

[2] These locations are in Stoneham and Attleboro.  All My Sons Moving and Storage of Rhode Island LLC operates the Attleboro location and All My Sons Moving and Storage of Boston LLC (which is not presently a party) operates the Stoneham location.

the employees who drive the moving trucks during assignments. Helpers are Drivers' "'right-hand m[e]n' helping on the job" and assist Drivers in performing tasks related to the move itself. Dkt. 62 ¶ 2.  A typical work assignment includes one Driver and one to two Helpers.

The parties disagree as to whether All My Sons pays Helpers the Massachusetts minimum wage or at a rate slightly above minimum wage.  They agree, however, that All My Sons pays Drivers at a rate above minimum wage (although they dispute how far above minimum wage that rate is).

Employees are not compensated for all hours worked between the time they arrive at All My Sons in the morning and the time they leave the warehouse at end of the day.  The company's "Payroll Policy" expressly states that the "pay plan for Drivers and Helpers is . . . not based strictly on hours worked."  Dkt. 51-1 at 1. It notes: "Instead of setting an hourly rate at minimum wage and paying from the time you arrive at All My Sons facility in the morning until the time you leave at the end of the day, your total pay is set above minimum wage."  Id.  The Payroll Policy also instructs each employee to "record the time you arrive at the All My Sons facility to begin your shift as well as the time you leave the facility at the end of your shift" so the company may "compare

---

Plaintiffs have filed a motion to amend their complaint to add All My Sons Moving and Storage of Boston LLC as a party (Dkt. 73).

your total pay for the workweek to the total hours worked to make sure it meets required minimums." Id. at 2. All My Sons did not keep records documenting its employees' arrival or departure times.

Per company policy, All My Sons requires Drivers and Helpers working out of its Massachusetts locations to arrive at the warehouse by 7:00 a.m. to receive their assignments and load any required materials onto the moving trucks. The parties dispute, however, whether Drivers and Helpers actually showed up at 7:00 a.m. Dkt. 51-7 at 15 ("Some may arrive at 7:00. Some may arrive at 7:15. Some very well may arrive at 7:30. We would like them to be there at 6:45 or 7:00. That doesn't necessarily mean that they will be."); see also Dkt. 62 ¶ 7. They also dispute how long the assignment and loading process typically takes, with All My Sons indicating it lasts five or ten minutes and Plaintiffs indicating it can last up to an hour and a half.

All My Sons does not compensate employees for any time spent in the warehouse in the morning. Instead, the workday clock for Drivers and Helpers only "starts" when they "arrive at the customer location and obtain the customer's initials next to the start time." Dkt. 51-1 at 1. The clock then "stops" when they "finish the move at the customer's new location and obtain the customer's initials next to stop time, certifying that the job is complete." Id.

In addition to the "labor hours" captured by the workday clock, see id., All My Sons compensates employees for time spent traveling to customer sites at the start of the day and returning to the warehouse after a job ends.  It does not, however, directly record how long employees spend in transit.  Instead, it estimates "travel time."  Id.  For local moves, All My Sons awards Drivers an extra hour per assignment and Helpers an extra half an hour per assignment.  For short-haul and long-distance moves, it awards Drivers 100% of the calculation of total mileage traveled (assuming an average speed of 50 miles per hour) and Helpers 75% of that calculation.  Helpers and Drivers return to the warehouse at the end of the day to return the truck and equipment.

The Payroll Policy further provides for employees to be compensated for "Warehouse Time labor," measured as "[s]imple start and stop time from the time work begins and ends."  Id. at 2.  All My Sons does not contend that it used "Warehouse Time labor" to pay any of its employees for time spent in the warehouse loading trucks in the morning or unloading them in the afternoon.  It instead used this calculation for time spent sweeping the lot or taking out the trash.

## DISCUSSION

### I.   Legal Standard

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Generally, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990). Once it has made the requisite showing, the burden shifts to the nonmovant to "present definite, competent evidence to rebut the motion" and demonstrate that a "trialworthy issue persists." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (internal citations and quotations omitted). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000) (quoting Anderson, 477 U.S. at 252).

## II.  **Analysis**

### A. All My Sons' Motion for Summary Judgment

All My Sons seeks entry of judgment in its favor on Count I (the Wage Act claim).[3] It contends that, because the Wage Act only exists to "ensure[] that employers fulfill the promises they make to employees," Dkt. 47 at 5, and because it has fulfilled its promises to employees by complying with the wage structure set forth in the Payroll Policy, it is entitled to a finding as a matter of law that it did not violate the Wage Act.

The "purpose" of the Wage Act is "to prevent the unreasonable detention of wages," Weiss v. DHL Express, Inc., 718 F.3d 39, 47 (1st Cir. 2013) (quoting Bos. Police Patrolmen's Ass'n, Inc. v. City of Bos., 761 N.E.2d 479, 481 (Mass. 2002)), not to "prescribe any particular method by which employees must be paid their earned wages," Salerno v. Baystate Ford, Inc., No. 14-8609-D, 2016 WL 513747, at *2 (Mass. Super. Feb. 5, 2016); cf. Bos. Police Patrolmen's Ass'n, 761 N.E.2d at 481 (concluding that deferred compensation contributions were not "wages" unlawfully withheld within the meaning of the Wage Act because "[t]he contributed funds

---

[3] The Wage Act states that:

> Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or to within seven days of the termination of the pay period during which the wages were earned if such employee is employed seven days in a calendar week . . . .

Mass. Gen. Laws ch. 149, § 148.

are intended to be held, out of the employee's possession, for an extended period" in exchange for "the benefit of a tax deferment," plaintiffs agreed to participate in the deferred compensation program, and the program itself was authorized by Massachusetts law). "[T]here is nothing in the statute's plain language that requires employers to compensate their employees in a particular manner, or precludes them from agreeing to any time or work measurement that they deem to be appropriate. Thus, as long as the employer pays each of its employees all 'wages earned' in a timely manner, and does not violate any other wage law such as the minimum wage statute set forth in Mass. Gen. Laws ch. 151, parties to an employment relationship are free to use whatever compensation structure they see fit." DeSaint v. Delta Air Lines, Inc., No. 13-cv-11856-GAO, 2015 WL 1888242, at *10 (D. Mass. Apr. 15, 2015) (internal citations omitted).

The Court agrees with All My Sons that the Payroll Policy does not facially violate the Wage Act simply because it fails to separately pay employees for each hour worked.  The implementing regulations for the Wage Act implicitly recognize that compensation structures other than straight hourly wages may be permissible.  See 454 Mass. Code Regs. § 27.02 ("When an employee is paid on a piece work basis, salary, or any basis other than an hourly rate, the regularly hourly rate shall be determined by dividing the employee's total weekly earnings by the total hours

worked during the week."). And after reviewing the terms of the Payroll Policy itself, the Court believes it to establish a "compensation structure with the employee [that] pays him on an hourly basis for only certain tasks but no additional compensation for others," Salerno, 2016 WL 513747, at *3, and not to constitute an attempt to evade the requirements of the Wage Act by "special contract," Mass. Gen. Laws ch. 149, § 148.

Plaintiffs argue that, even if the Payroll Policy is a permissible agreement, they never clearly and unambiguously consented "to forego their hourly pay for all hours actually worked" as provided for in the Payroll Policy. Dkt. 64 at 2; see also Salerno, 2016 WL 513747, at *3 ("[A]n employer and employee who agree at the outset of their contract that the employee will be paid at an hourly rate for selected tasks, but not for all work, are plainly not violating the Wage Act when the employee is paid in accordance with this agreed understanding." (emphases added and omitted)). As proof, they point to the testimony of one plaintiff who stated that he was unaware "right off the bat" of the Payroll Policy's compensation structure (i.e., that he would not be paid for each hour worked). Dkt. 51-5 at 13. This individual, however, subsequently conceded that he learned of it by "[his] first check, probably like two weeks later from when [he] first started." Id.; see also Dkt. 64 at 8-9 ("Plaintiff Lee specifically testified that he did not understand that he would not be paid for his time

at the warehouse beginning at 7 a.m. each morning when he first started, and came to understand this only after he had begun working and received his first paycheck."). That he (and the other plaintiffs) continued to work after receiving notice of the applicable compensation structure suffices to supply the necessary consideration to create an contract pursuant to the Payroll Policy – at least under the circumstances of this case. See Jackson v. Action for Bos. Cmty. Dev., Inc., 525 N.E.2d 411, 415 (Mass. 1988) ("[R]emaining with an employer after, or commencing employment upon, receiving an employee manual, can, in appropriate circumstances, supply the necessary consideration to incorporate the manual's terms into an employment contract."); see also Gishen v. Dura Corp., 285 N.E.2d 117, 121 (Mass. 1972) ("Moreover, as matter of law, there were both consideration and assent for the February modification in Gishen's continuing to work for Dura, with its knowledge and approval, at considerably lower commission rates.").

Plaintiffs contend that, even if they agreed to the Payroll Policy, All My Sons has not complied with the promises contained within that document. Specifically, Plaintiffs argue that they have not been paid for "Warehouse Time labor," calculated as "[s]imple start and stop time from the time work begins and ends." Dkt. 51-1 at 2. The Court agrees. By its plain language, "Warehouse Time labor" equates to time spent working in the

warehouse.   It thus encompasses the time spent by Plaintiffs in
the warehouse in the morning and the afternoon.   As All My Sons
did not compensate Plaintiffs for this time, All My Sons did not
provide Plaintiffs with all wages promised under the Payroll
Policy.[4]   Accordingly, the Court allows defendants' motion for
summary judgment on Count I except with respect to warehouse time
labor.

### B. Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on two issues related to
Count II (the Minimum Wage Law claim).   First, they seek a finding
that All My Sons violated the requirement under Mass. Gen. Laws
ch. 151, § 15, and 454 Mass. Code Regs. § 27.07(2) to keep records
of all hours worked by its employees, which would allow them to
use the relaxed burden of proof framework established by Anderson
v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), to establish
liability on Count II.   Defendant correctly notes that there is no
separate cause of action where an employer fails to keep accurate
records.   See Walker v. Osterman Propane LLC, 411 F. Supp. 3d 100,
109 (D. Mass. 2019).   The Court accordingly will deny this portion
of Plaintiffs' motion.   Nonetheless, because All My Sons
indisputably did not record when employees arrived on site at the

---

[4] Plaintiffs did not move for summary judgment on Count I.

warehouse in the morning or left in the evening, the Court will apply the relaxed burden.

Second, Plaintiffs argue that, "as a matter of law, the time from when the class members arrived at All My Sons office until their departure from the office at the end of the workday is 'compensable.'" Dkt. 50 at 10.  The parties' briefs appear to be ships passing in the night: All My Sons does not challenge this point.  To the contrary, it concedes that, for the purposes of calculating compliance with the Minimum Wage Law, all hours worked must be considered, even if they are not separately compensated.[5] The Court accordingly allows the portion of Plaintiffs' motion seeking a holding that all time worked in a workweek is compensable for the purposes of calculating compliance with the Minimum Wage Law.

**ORDER**

---

[5] Based on their briefing, Plaintiffs also appeared to seek summary judgment on their claim that "All My Sons policy facially violates the Massachusetts minimum wage law," at least for those "Helper" employees earning minimum wage.  See Dkt. 50 at 12.  The Court denies the motion on the ground that the record is unclear on this point.  Although Plaintiffs did not press this issue at the hearing, there is a dispute over whether an employer may use workweek averaging to determine whether an employer complies with minimum wage laws.  The Court notes that most cases favor workweek averaging and that nothing in the text of the statute or its implementing regulations would support a contrary reading.  See, e.g., 454 Mass. Code Regs. § 27.02 (providing that "an employee shall be paid not less than the applicable minimum wage each week" (emphasis added)).

For the reasons stated above, defendants' motion for summary judgment (Dkt. 46) is **ALLOWED IN PART** and **DENIED IN PART** and plaintiffs' motion for summary judgment (Dkt. 50) is **ALLOWED IN PART** and **DENIED IN PART**.

      SO ORDERED.

                    /s/ PATTI B. SARIS
                    Patti B. Saris
                    United States District Judge