# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
)
JACOB GROGAN, PAUL JONES,                )
TERRANCE LEE, TREAVON                     )
WHITAKER, and JOSAPHAT                    )
HERNANDEZ                                  )
individually and                          )
on behalf of all others similarly         )
situated,                                 )          No.  19-cv-11531-PBS
                                          )
                         Plaintiffs,      )
                                          )
           v.                             )
                                          )
ALL MY SONS MOVING AND                    )
STORAGE BUSINESS DEVELOPMENT  )
LLC;  and ALL MY SONS                     )
MOVING AND STORAGE OF RHODE   )
ISLAND; ALL MY SONS OF                    )
BOSTON, LLC and CHRIS GENERALE  )
                                          )
                         Defendants       )
_____)


## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT AND ORDER OF DISMISSAL

This wage-and-hour case was brought on behalf of current and former employees of All My Sons Moving and Storage and related entities. On March 31, 2021, the Court certified two classes of all "Helpers" and "Drivers" who worked for Defendants in Massachusetts since April 26, 2016. See Dkt. 40. All class members asserted two claims. In Count I, they alleged that All My Sons failed to pay them their agreed-upon hourly wage for all hours worked. See Dkt. 78 (Amended Complaint). In Count II, class members allege that All My Sons failed to pay them the statutory minimum wage in each workweek, due to the Defendants' failure to record all of their actual worktime. Id. Defendants contested these allegations and at all times denied that they violated any wage laws.

After attending mediation on September 10, 2021 with well-known wage-and-hour mediator Dennis Clifford, Esq., the Parties succeeded in reaching a proposed class action settlement of this case that provides a non-reversionary settlement fund of $750,000. On November 9, 2021, the Court granted preliminary approval of the settlement. After that date, and pursuant to the Parties' settlement agreement, the settlement notice was distributed to the 790 class members identified by Defendants. Additional notice efforts are discussed in greater detail below. No objections have been received, and no class members have excluded themselves from the settlement class.

At the time of filing, Claim Forms have been received from 218 class members who will receive a settlement check. At the current level of participation, the average settlement share of a participating class member is $2,030 after accounting for attorney's fees and claiming class members are receiving $79 for each week that they worked during the statutory period. Moreover, the class members who are currently participating in the settlement are those that worked for All My Sons for the longest period of time and thus were more likely to receive a larger damages award if their claims had been successful at trial. This is demonstrated by the fact that although 27.7% of

the class members have filed a claim form to participate, those claiming class members worked more than 55% of the workweeks of the entire class. Moreover, a second text message "reminder" notice was just recently sent reminding class members of the upcoming final approval hearing, and Class Counsel anticipates that the claims rate may increase over the next several days. The parties have agreed that late claim forms will be accepted, so long as it does not delay the initial settlement payments to the class.

By this Motion, Plaintiffs now seek an order granting final approval of the settlement and dismissal of the action with prejudice. A copy of the proposed settlement agreement is attached hereto as Exhibit 1, and a Proposed Final Approval Order is attached hereto as Exhibit 2.

As discussed in greater detail below, final approval is warranted under Rule 23(e)(2) because the settlement is fair, reasonable, and adequate. The proposed settlement would pay a total of $750,000 in consideration for a release of the claims asserted and other wage-related claims of a Rule 23 class of 790 individuals. Based on an analysis performed by Plaintiff's expert witness, the $750,000 settlement fund constitutes approximately 90% of the potential minimum wage and wage payment damages had the class ultimately succeeded at trial in establishing all of their allegedly unpaid worktime. At the current level of participation, class members will receive an average share of more than $2,000, or approximately $79 for each week that they worked for All My Sons. The proposed allocation of the non-reversionary settlement fund is submitted herewith as an Attachment to the Declaration of Attorney Matthew Thomson (Exhibit 3),[1] which demonstrates that the settlement provides substantial benefit to the class members, while accounting for the substantial

---

[1]     The projected individual settlement shares set forth in Exhibit 3 are the calculated settlement shares based on information currently available and the claims rate at the time of filing; Plaintiffs' counsel is in the process of confirming the dates of employment of four of the claiming settlement class members and additional claims may still be received over the next several days, which may have a minor effect on the final distribution amounts.

risks and delays associated with continued litigation, trial, and a likely appeal.  The settlement is the product of arm's length negotiation, and final approval should be granted.

## I.    THE TERMS OF THE SETTLEMENT AGREEMENT AND THE RESULTS OF THE NOTICE PROCESS

On April 26, 2019, Plaintiffs Jacob Grogan, Terrance Lee, Paul Jones, and Treavon Whitaker commenced an action by filing a Complaint in Massachusetts Superior Court on behalf of themselves and a proposed class consisting of all drivers and drivers' helpers who worked for All My Sons in Massachusetts during the previous three years.  The Complaint alleged that the Defendants had deprived Plaintiffs and the purported class of earned wages; failed to pay drivers and helpers their agreed-upon hourly rate for all of the time that they worked; had not complied with Massachusetts minimum wage law with respect to the Class; had not maintained proper payroll records; and had retaliated against the Plaintiffs for raising concerns with respect to defendants' wage practices.  On July 12, 2019, Defendants removed the Civil Action to the United States District Court for the District of Massachusetts. Defendants then filed an Answer denying the factual allegations of the Complaint and further denying that they had failed to comply with Massachusetts wage laws.

The Parties engaged in discovery, exchanging documents, responding to interrogatories, and attending seven depositions, comprised of four depositions total of the original named Plaintiffs, and three depositions of current or former management employees of Defendant.  After briefing and oral argument on the issue of class certification, on March 31, 2021, the Court certified two classes pursuant to Fed. R. Civ. P. 23, defined as:

(1) All Drivers employed by All My Sons Moving who performed work from an office location in Massachusetts, from April 26, 2016 to the present; and

(2) All Helpers employed by All My Sons Moving who performed work from an office location in Massachusetts, from April 26, 2016 to the present.[2]

Both sides later moved for partial summary judgment related to several legal issues in the case. After oral argument, on August 4, 2021, the Court issued an Order allowing in part and denying in part each side's motion for partial summary judgment. See Dkt. 74. A trial date was set for November 9, 2021. On August 11, 2021, Plaintiffs filed an Amended Complaint, adding All My Sons of Boston, LLC as a Defendant, and adding Josaphat Hernandez as an additional Plaintiff.

The proposed Rule 23 settlement would resolve the claims of all individuals included in the classes certified by the Court in its March 31 Order, and merely clarifies an end date for class membership:

> All Drivers who performed work from an All My Sons office location in Massachusetts for all or part of the period from April 26, 2016 through September 10, 2021.
>
> and
>
> All Helpers who performed work from an All My Sons office location in Massachusetts for all or part of the period from April 26, 2016 through September 10, 2021.

Upon final approval of the settlement, the class portion of the settlement funds will be distributed to Rule 23 class members who submit a claim form to obtain their settlement share and who have not excluded themselves from the settlement. The settlement shares submitted with Exhibit 3 have been calculated based on the number of weeks that each class member worked for Defendants during the relevant time period.

---

2    As discussed in below, there is no change to the class definition for purposes of this settlement except that the Parties are clarifying that the proposed settlement class has a cutoff date of September 10, 2021 for class membership. See Agreement (Ex. 1) at para. 1(h).

Under the proposed settlement, Defendants shall pay a total of $750,000, to be allocated as follows:

- $442,500 for the Class Shares of participating class members;

- $45,000 total in service payments to the five named Plaintiffs (discussed in greater detail below);

- $250,000 for Class Counsel's attorneys' fees and costs (constituting one-third of the settlement fund, without any separate request for reimbursement of litigation expenses);

- $12,500 for Settlement Administration Fees.

Defendants will fund the proposed settlement in full approximately twenty days after an Order granting final approval.  Payments to claiming class members will be made in a first distribution approximately two weeks following payment by the third-party settlement administrator, Simpluris.

Within 90 days of the first distribution, there will be a second distribution of any amounts from uncashed checks *plus* the reserve fund to all claiming class members on a *pro rata* basis.

Plaintiffs anticipate that by using two distributions of funds, this will eliminate the risk of a substantial *cy pres* award and ensure that funds are received by the class members, although any funds remaining from uncashed checks *from the second distribution* will be distributed as *cy pres* to the Employment Unit of Greater Boston Legal Services.  The settlement is non-reversionary; no funds will be returned to Defendants for any purposes.

Following the Court's Preliminary Approval Order, settlement notice was distributed to 790 class members via First Class Mail on December 6, 2021.  See Thomson Decl. (Ex. 3) at ¶ 4.  Two hundred and three (203) of the notices were returned as undeliverable, and by using available "people finder" software, 127 of these undeliverable notices were remailed to an updated address.  See id. at

¶ 5.  A text message reminder was sent to all class members whose phone numbers were available to class counsel on January 24, 2022, which reached approximately 224 class members.  Id. at ¶ 6.  After receipt of additional phone numbers, a second text message notice reminder was sent to 444 class members who had not yet claimed on February 24, 2022.  Id. at ¶ 7.

None of the class members have excluded themselves from the settlement class.  All class members will therefore be bound by a classwide release of all claims based upon or related to the facts pled in the Amended Complaint and only those class members who sign their settlement check and receive funds will be deemed to have released their claims for alleged underpayment of the federal minimum wage pursuant to the FLSA.  The five named Plaintiffs have agreed to a broader general release of all claims.  The proposed incentive payment serves as additional consideration for their general release and for the release of their claims alleging unlawful retaliation.

No class members have objected to the settlement.

## II.     THE FACTORS SET FORTH IN RULE 23(e)(2) OVERWHELMINGLY FAVOR GRANTING FINAL APPROVAL OF THE PROPOSED SETTLEMENT

It is well established that courts favor settlements of lawsuits over continued litigation.  See, e.g., Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910); E.E.O.C. v. Astra U.S.A., Inc., 94 F.3d 738, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement"); Durett v. Housing Auth. of Providence, 896 F.2d 600, 604 (1st Cir. 1990) (recognizing the "clear policy in favor of encouraging settlements"); Newberg on Class Actions, §11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy").  The advantages of settlements are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources," Mayfield v. Barr, 985 F.2d 1090, 1092 (D.C. Cir. 1993), and "where one proceeding can

resolve many thousands . . . of claims that might otherwise threaten to swamp the judiciary," 2 McLaughlin on Class Action § 6:3.

The Federal Rules of Civil Procedure require court approval of class action settlements, and mandate approval of such settlements if they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); see also In re Relafen Antitrust Litig., 360 F. Supp. 2d 166, 195 (D. Mass. 2005). In order to determine whether the settlement is "fair, reasonable, and adequate," a court must look to Rule 23(e)(2)'s approval factors, which examine whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). An examination the relevant factors demonstrates that the proposed settlement in this case is fair, reasonable, and adequate, and should be approved by the Court.[3]

---

[3] Similar settlements in wage and hour class action cases brought by Plaintiffs' counsel have been approved in dozens of cases. These settlements contained terms similar to the proposed settlement in this case, including a similar method for notifying class members, distributing the settlement fund, allocating incentive payments, and providing for the one-third attorneys' fees award. These cases are discussed in Exhibit 4 at Paragraphs 3-5.

### 1. Class Counsel and the Class Representatives have adequately represented the Class under Rule 23(e)(2)(A)

Here, the named Plaintiff and class counsel have more than adequately represented the interests of the class.  Class Counsel at Lichten & Liss-Riordan, P.C. is highly experienced in wage-and-hour class action cases, having litigated and settled dozens of cases arising under the state and federal wage laws.  <u>See</u> Lichten Decl. (Exhibit 4) at ¶¶ 3-4.  Class counsel was able to draw from this experience in representing the Plaintiffs in this action.

The named Plaintiffs and Class Representatives have also zealously represented the interests of the class.  The four original named plaintiffs were current employees of All My Sons when this Action was initiated, and thus took on the risk of potential retaliation by brining this case to recover unpaid wages on behalf of their colleagues.  The four original named plaintiffs assisted Plaintiffs' counsel in the original investigation of this case, all responded to written discovery, and all sat for a deposition.  All four of the original named Plaintiffs also provided valuable guidance and assistance to Class Counsel related to the first mediation of this matter in 2020 and the second mediation in 2021.  In addition, following certification of a class of all All My Sons employees in Massachusetts, Plaintiff Hernandez immediately came forward to serve as an adequate class representative (if needed) for the employees who worked out of the Boston All My Sons office location.  Though he was not asked to participate in discovery, he remained willing and available to fully respond to written discovery and attend a deposition if asked to do so.  Thus, all five of the named Plaintiffs have provided valuable services to the other class members.

### 2. The proposed settlement was clearly negotiated at arm's length under Rule 23(e)(2)(B) with the assistance of an experienced wage-and-hour mediator

The settlement was also negotiated at arms-length.  The Parties completed full discovery, including exchange of payroll data and job assignment data that formed the basis of Plaintiffs'

classwide damages analysis. Plaintiffs' counsel retained an expert witness, Liesl Fox, Ph.D, to analyze that data and draft a preliminary expert report and damages analysis prior to the second mediation session. See Thomson Decl. at ¶ 15. The Parties attended a first mediation through JAMS in Boston with Retired Superior Court Judge Bonnie MacLeod in 2020 and a second mediation in 2021 with experienced wage-and-hour mediator Dennis Clifford. Such due diligence in the negotiation process is necessarily indicative of a fair result. See generally In re Linerboard Antitrust Litig., 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery").

### 3. The relief provided by the settlement is fair and adequate under Rule 23(e)(2)(C)(i) in light of the risks of proceeding to trial

The relief offered by the settlement is substantial. Plaintiffs estimate that the $750,000 class settlement fund approximates 90% of the class members' minimum wage and straight time damages if they had been successful in all of their claims at trial. This is based on the maximum amount of uncompensated worktime that would have been alleged by the class. Although Plaintiffs were confident in the merits of their claims, Defendants vigorously contested the amount of alleged uncompensated worktime, argued that there is a setoff between any potential minimum wage and straight-time damages, and pursued several other affirmative defenses. Moreover, Defendants likely would have appealed any unfavorable jury verdict, raising various arguments on appeal to challenge the propriety of class certification as well as the Court's rulings on the Parties' motions for partial summary judgment. In light of these uncertainties, as well as likely significant delays in obtaining any compensation even if they were ultimately successful at trial, Plaintiffs and their counsel believe that the proposed settlement is an excellent result for the class and that the recovery is consistent with what is frequently approved in wage and hour class actions. See generally Norris

v. Lake Conway Landscaping of Orlando, Inc., 2015 WL 3632314, at *2 (M.D. Fla. June 10, 2015) (holding that a compromise for 41.6% of the total damages initially claimed by plaintiff was reasonable due to "bona fide disputes" concerning FLSA provisions); Clayton v. Knight Transp., 2013 WL 5877213, at *5 (E.D. Cal. Oct. 30, 2013) (approving Rule 23 settlement where with "approximately fifty percent of the amount of unpaid overtime to which they would be entitled should they prevail at trial"); Moreyra v. Fresenius Med. Care Holdings, Inc., 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (Rule 23 settlement approval where gross settlement amount was "approximately 32 percent of the lost wages"); see also In re Currency Conversion Fee Antitrust Litig., 2006 WL 3247396 at *6 (S.D.N.Y. Nov.8, 2006) (approving settlement of "roughly 10-15%" of the allegedly illegal fees collected from the class).

**4. The notice process and the method for distributing relief to the Class members are both effective under Rule 23(e)(2)(C)(ii).**

The notice process, which this Court previously approved, was effective and additional efforts have increased the participation rate.

Following the Court's Preliminary Approval Order, settlement notice was distributed to 790 class members via First Class Mail on December 6, 2021. See Thomson Decl. at ¶ 4. Two hundred three (203) of the notices were returned as undeliverable, and by using available "people finder" software, 127 of these undeliverable notices were remailed to an updated address. See id. at ¶ 5. By agreement of the Parties, text message reminder was sent to all class members whose phone numbers were available to class counsel on January 24, 2022, which reached approximately 224 class members. See id. at ¶ 6. After receipt of additional phone numbers for 258 class members, on February 24, 2022, our settlement department sent a second text message notice reminder to 444 individuals, consisting of all class members who had not yet submitted a claim form and for whom

Defendants had provided a last-known phone number.  This text message reminder notice contained a link to an electronic claim form that could be completed and submitted online.  See id. at ¶ 7.

At the time of filing, Claim Forms have been received from 218 class members who will receive a settlement check.  The class members who are currently participating in the settlement are those that worked for All My Sons for the longest period of time and thus were more likely to receive a larger damages award if their claims had been successful at trial.  This is demonstrated by the fact that although 27.7% of the class members have filed a claim form to participate, those claiming class members worked more than 55% of the workweeks of the entire class.  Approximately 220 of the class members who have yet to claim worked for Defendants for three weeks or less, with approximately 115 of those individuals working for only a single week.  Though it would be ideal to have received claim forms from all class members, this demonstrates that a substantial portion of the class members who have yet to submit a claim form worked for a very short amount of time and have less valuable claims and, understandably, less interest in being involved in this litigation.

The method for distributing settlement checks to participating class members is also efficient and effective.  The third-party settlement administrator will mail settlement checks to each claiming class member, who has confirmed his or her recent mailing address through submission of the claim form.

### 5. The requested attorney's fees are reasonable under Rule 23(e)(2)(C)(iii).

Plaintiffs have requested that $250,000 total (or one-third of the $750,000 settlement fund) be awarded in attorney's fees.  Plaintiffs are not seeking an additional award of actual out-of-pocket litigation expenses, which were significant and amounted to $21,000 due to two private mediations and Plaintiffs' retention of an expert witness to perform a detailed damages analysis.  See Lichten

Decl. (Exhibit 4) at ¶ 16. When accounting for these costs, the actual fees received by counsel are 30.5% of the fund.

A one-third amount for attorney's fees, which has been consistently approved by courts in similar cases, is fair and reasonable and should be approved in this case as well.  As with all cases of this nature handled by Plaintiffs' counsel's firm, Plaintiffs' counsel accepted this case on a fully contingent arrangement, with no payment up front, and have borne all the expenses, costs, and risks associated with litigating this case for nearly three years.  See Lichten Decl. at ¶ 8.  The notice also informed class members that one-third of the settlement proceeds would be used to pay for attorneys' fees.

A one-third attorney's fee in a common fund case has been consistently approved as reasonable.  See, e.g., In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Lit., 56 F.3d 295 (1st Cir. 1995) (awarding attorneys' fees of $68 million out of a $220 million settlement fund).[4] Courts favor awarding fees from a common fund based upon the percentage of the fund method.  As the Supreme Court has explained:

---

[4]        In Thirteen Appeals, the First Circuit noted that other Courts of Appeals have *required* the use of percentage awards in common fund cases. See, e.g., Camden Condominium Ass'n v. Dunkle, 946 F.2d 768, 771 (11th Cir. 1991); Swedish Hospital Corp. v. Shalala, 1 F.3d 1261, 1271-72 (D.C. Cir. 1993).  See also Matamoros et al v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass. 2013) (approving award of one-third attorneys' fee for a $23.5 million settlement in a Tips Law class action); Johnson et al. v. Morton's Restaurant Group, Civ. A. No. 05-11058 (D. Mass. 2009) (approving award of one-third attorneys' fee for a $12 million settlement in a Tips Law class action);  In re Crazy Eddie Securities Litig., 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); City National Bank v. American Com. Financial Corp., 657 F. Supp. 817 (W.D.N.C. 1987); Hwang v. Smith Corona Corp., B.89-450 (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund); Chalverus v. Pegasystems, Inc., Civ. A. No. 97-12570 (D. Mass. 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery); In re: Peritus Software Servs., Inc. Sec. Litig., Civ. A. No. 98-10578 (D. Mass. 2000); In re Copley Pharm., Inc. Sec. Litig., Civ. A. No. 94-11896 (D. Mass. 1996) (awarding one-third of a $6.3 million settlement fund); Morton v. Kurzweil Applied Intelligence, Inc., Civ. A. No. 10829 (D. Mass. Feb. 4, 1998); In re Gillette Securities Litigation,  Civ. A. No. 88-1858 (D. Mass. Mar. 30, 1994); Wilensky v. Digital Equipment Corporation, Civ. A. No. 94-10752 (D. Mass. 2001); In re

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. . . .  Jurisdiction over the fund involved in the litigation allows a Court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (citations omitted); see also Blum v. Stenson, 465 U.S 886, 900 n.16 (1984).

Among the advantages of the percentage approach recognized by the First Circuit in Thirteen Appeals was the fact that it is less burdensome to administer than the lodestar method.  See Thirteen Appeals, 56 F.3d at 307.  The court in that case also endorsed the percentage of recovery approach because it is result-oriented, thereby promoting the more efficient use of attorney time and resources, rather than encouraging attorneys to prolong litigation in order to inflate their recoverable hours.  See id. ("[U]sing the [percentage of fund] method . . . enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency.  Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement").  Similarly, the Court observed that the percentage method better approximates the workings of the marketplace by ensuring that attorneys receive compensation for the true value of their services and skills.  See id. ("Another point is worth making: because the [percentage of fund] technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace.  . . . the market pays for the result achieved"), quoting In re Continental Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992).

---

Picturetel Corporation Sec. Litig., Civ. A. No. 97-12135 (D. Mass. Nov. 4, 1999) (approving award of one-third of a $12 million settlement fund); Zeid v. Open Environment Corp., Civ. A. No. 96-12466 (D. Mass. 1999) (awarding a fee of one-third of a $6 million settlement).

Finally, awarding a percentage of the common fund, such as the one-third fee in this case, recognizes and encourages the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees.[5]  Unlike traditional firms that receive hourly fees on a monthly basis, plaintiff's attorneys who take cases on contingency often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, document production, and so forth), without ever receiving any ongoing payment for their work.  Sometimes fees and expenses are recovered; other times, despite hundreds or even thousands of hours of work, nothing is recovered.  This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees.  Courts have long recognized this reality.  See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate").  For that reason, courts have routinely approved one-third fee awards in class settlements, recognizing "the attorneys' fees requested [are] entirely contingent upon success.  Proposed Class Counsel risk[s] time and effort and advance[s] costs and expenses,

_____

[5]    In approving one-third contingency fees for such cases, courts have recognized that Plaintiffs' counsel who take cases on contingency, including the undersigned, often spend years litigating cases vigorously without receiving any payment at all for their work.  The system of permitting attorneys to accept work on a contingency basis recognizes that in many cases, attorneys will not receive any payment for years (if at all), and in some cases they will receive larger payments. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate").  Such a system allows parties access to the courts who would not otherwise be able to find competent, and successful, counsel to represent them.

with no ultimate guarantee of compensation." Macedonia Church v. Lancaster Hotel, LP, 2011 WL 2360138, *14 (D. Conn. June 9, 2011).

By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue in this case. It is well recognized that "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." Reiter v. Sonotone Corp., 442 U.S. 330, 344 (1979) (addressing anti-trust laws). This reasoning applies with equal force to wage and hour claims. See Skirchak v. Dynamics Research Corp., Inc., 432 F. Supp. 2d 175, 179 (D. Mass. 2006) ("Allowing private attorneys to prosecute [wage] actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims"), aff'd 508 F.3d 49 (1st Cir. 2007).

Though not required, some courts awarding fees based on a percentage of the fund method perform a lodestar "cross check" to assess the reasonableness of the fee request. See In re Relafen Antitrust Litig., 231 F.R.D. 52, 81 (D. Mass. 2005), citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir.2002) ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful *perspective* on the reasonableness of a given percentage award."). The lodestar crosscheck in this case demonstrates that the requested fees of $250,000 is fair and reasonable. Attorneys at Lichten & Liss-Riordan and Cohen Cleary, P.C. have collectively worked more than 583 hours on this litigation. See Lichten Decl. (Ex. 4) at ¶ 10; Langfield Decl. (Ex. 5) at ¶ 4. This time was comprised of investigation, drafting the Complaint, conducting full

written discovery, taking three depositions, defending four depositions, preparing for and attending

two mediation sessions, working closely with Plaintiffs' expert witness, drafting the complex

settlement agreement, preparing preliminary and final approval papers, and overseeing

administration of the settlement.  Counsel also spent significant time drafting, editing, and (where

applicable) arguing 1) Plaintiffs' motion for class certification and an accompanying Reply; 2)

Plaintiff's motion for partial summary judgment; 3) an Opposition to Defendants' Motion for partial

summary judgment; 4) Plaintiff's motion to amend the complaint; and 5) a Brief in Opposition to

Defendants' Rule 23(f) petition filed at the First Circuit.  A summary of the time keepers, hours,

and billing rates is included below:

| Name | Title | Hours | Hourly Rate | Total Lodestar |
|---|---|---|---|---|
| Harold L. Lichten | Partner | 47 | $700 | $32,900 |
| Matthew W. Thomson | Partner | 269 | $500 | $134,500 |
| Thomas J. Cleary | Partner | 23.8 | $325.00 | $7,735.00 |
| Eric B. Langfield | Senior Associate | 36 | $285.00 | $10,260.00 |
| Jack C. Zachary | Associate | 208 | $250.00 | $52,000.00 |
| TOTAL | -- | 583.8 | -- | $237,395.00 |

See Decl. of Lichten (Exhibit 4) at ¶ 10; Langfield Decl. (Exhibit 5) at ¶ 4.

The hourly rates included above are fair and reasonable, as set forth in the accompanying

Declaration.  See Lichten Decl. (Ex. 4) at ¶ 11.  Based on these hours and hourly rates and the

additional costs of $21,000, the requested fees and costs award of $250,000 is 0.97 times the

lodestar amount ($250,000 / $258,395); in other words, there is a negative "lodestar multiplier" of

0.97.  Lichten Decl. (Ex. 4) at ¶ 19.  Thus, had counsel submitted a fee request for all attorney's fees

and costs based on the lodestar method, their request would have been greater than the fees currently requested under the percentage of the fund method. Fees are frequently awarded where the lodestar "multiplier" is far higher than what is requested here. See In re Relafen Antitrust Litig., 231 F.R.D. at 82, citing Vizcaino, 290 F.3d at 1051 n. 6 (charting lodestar multipliers in common fund settlements and noting "a range of 0.6—19.6 with most (20 of 24, or 83%) from 1.0–4.0 and a bare majority (13 of 24, or 54%) in the 1.5–3.0 range").

### 6. The settlement treats Class members equitably under Rule 23(e)(2)(D).

Finally, all settlement class members will receive equitable treatment under the settlement. At current participation, Drivers and Helpers will all receive the same amount on a per week basis of $79 for each week that they worked within the statutory period. As the Court observed at the preliminary approval hearing, Drivers were often paid a higher hourly wage than Helpers. Pursuant to Plaintiffs' expert's damages analysis, this resulted in the Drivers' average potential damages on Count I (the "straight time" claim) of $79.00 per week, with Helpers averaging $52.00 per week in potential straight time damages on this same Count (a difference of approximately $17.00). Conversely, because Helpers started with a lower base hourly wage, their average weekly potential damages on the minimum wage count (Count II) was $30, which was eighteen dollars ($18.00) higher than the potential recovery of Drivers under this theory, whose average potential minimum wage damages were $12.00 per week. Thus, depending on whether the class fared better on Count I or Count II at trial, either Drivers or Helpers may have obtained greater relief relative to each other, but at their relative "gain" compared to the other group was virtually equal. Complicating matters further, had the class obtained maximum relief under both theories, it is likely that Defendants would have argued that there should be an offset between an individual class member's minimum wage and "straight time" damages in some weeks to avoid possible double recovery of both the

statutory minimum wage and their hourly wage for the same hours worked.  Given these considerations, it is Class Counsel's opinion that the simplest and most fair method for allocating funds is to use a uniform formula for Drivers and Helpers so that all claiming class members receive the same amount per week through the settlement.

### III.  THE PROPOSED INCENTIVE PAYMENTS ARE FAIR AND REASONABLE

The proposed settlement would include an incentive payment of $10,000 for the four original lead plaintiffs, Jacob Grogan, Treavon Whitaker, Terrance Lee, and Paul Jones.  An incentive payment of $5,000 is proposed for Plaintiff Hernandez.

"Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit." Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014). Service awards "are customary and appropriate in recognition of a named plaintiff who has served, as is the case here, as the class representative through extensive litigation and has assisted class counsel, by, among other things, obtaining critical documents, reviewing filings and otherwise assisting class counsel in the prosecution of [the] case."  Bacchi v. Massachusetts Mut. Life Ins. Co., 2017 WL 5177610, at *5 (D. Mass. Nov. 8, 2017).  "In determining whether a service award is warranted, courts consider the steps these individuals have taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort they have expended in pursuing the litigation, [] and any negative effects that they have risked." Scovil, 2014 WL 1057079, at *6  (internal citation omitted). In Scovil, a wage and hour action under the FLSA and Maine law, the court approved incentive awards from $15,000 to $20,000, recognizing that service awards of $10,000 to $15,000 are standard in wage and hour cases, and on occasion reach "$20,000, $30,000 and higher." Id.

Here, the settlement includes a proposed $10,000 incentive payment each for the four originating Plaintiffs and class representatives. All fully responded to written discovery and were deposed in this matter. All four of these individuals assisted Plaintiffs' counsel in negotiating the settlement in this matter. Were it not for their commitment to this action, classwide relief would not have been possible. In reviewing contemporaneous records related to telephone communications, meetings, deposition preparation, and attendance at depositions, Plaintiffs' counsel estimates that each of the original named Plaintiffs expended more than 20 hours of his time advancing the class members' interests in this case. Thomson Decl. (Ex. 3) at ¶¶ 16-23. All four of these original named Plaintiffs were also current employees of Defendants when they filed this action and therefore took a substantial risk that they may face retaliation for bringing this case. See Sewell v. Bovis Lend Lease LMB, Inc., 2012 U.S. Dist. LEXIS 53556, at *40-43 (S.D.N.Y. Apr. 16, 2012) (granting service awards of $10,000 and $15,000 to class representatives and noting, *inter alia*, potential adverse actions by their employer or being "blacklisted" for future employment). All were pursuing claims for unlawful retaliation in violation of the Wage Act and this payment constitutes additional consideration for the release of these claims and the execution of a full general release.

A fifth incentive payment of $5,000 is proposed for the newly-added named Plaintiff Josephat Hernandez, who was added to the case by amendment to ensure that there would be an adequate class representative for those class members who worked out of the Boston All My Sons location. Mr. Hernandez was prepared to be deposed and to respond to discovery in this matter as necessary, and he greatly assisted class counsel in investigation of the facts related to the Boston location. In reviewing contemporaneous records of counsel, Class Counsel estimates that Mr. Hernandez expended more than four hours of his time advancing the class members' interests in this case. See Thomson Decl. (Ex. 3) at ¶ 24.

These incentive payments are consistent with amounts that are regularly approved in the First Circuit. See, e.g., Murray v. Grocery Delivery E-Servs. USA Inc., 2021 WL 5410505, at *3 (D. Mass. Oct. 15, 2021) (awarding $10,000 to two lead plaintiffs and lesser amounts to seven other plaintiffs in wage and hour settlement); Jean-Pierre v. J&L Cable TV Services, Inc., No. 18-11499, Order Granting Plaintiffs' Motion for Final Approval, slip op. at 5-6 (D. Mass. Aug. 31, 2021) (Dkt. 148) (approving incentive payments of $10,000 each to four named plaintiffs); DaSilva v. Border Transfer, No. 16-11205 (D. Mass. Oct. 16, 2019) (ECF No. 189) (approving class settlement with incentive payments of $15,000 each for two named plaintiffs); O'Connor v. Dairy, 2018 WL 3041388, at *3 (D. Me. June 19, 2018) (approving amounts ranging from $6,500 to $15,000 for five named plaintiffs in wage and hour class action); Lauture v. A.C. Moore Arts & Crafts, Inc., 2017 WL 6460244, at *3 (D. Mass. June 8, 2017) (awarding incentive payments of $15,000 each to two named plaintiffs in wage and hour settlement); Scovil, 2014 WL 1057079, at *6  (approving amounts from $15,000 to $20,000).

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court enter an order in the form attached hereto as Exhibit 2 granting final approval of the parties' proposed settlement as fair, reasonable, and adequate and dismissing all claims asserted in this action with prejudice.

Respectfully submitted,

JACOB GROGAN, PAUL JONES,
TERRANCE LEE, TREAVON
WHITAKER, and JOSAPHAT
HERNANDEZ individually and
on behalf of all others similarly situated

By and through their Counsel,


*/s/ Matthew Thomson*
Harold L. Lichten, BBO# 549689
Matthew Thomson, BBO# 682745
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
(617) 994-5800

Thomas J. Cleary (BBO# 669296)
COHEN CLEARY, P.C.
10 Commerce Way, Suite 4
Raynham, MA 02767
Tel: (508) 880-6677;
Fax: (508) 880-6679
tcleary@cohencleary.com


Dated:  February 28, 2022

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

I hereby certify that counsel for Plaintiffs conferred with counsel for Defendants via email

regarding the issues raised in this motion and that Defendants have stated that they do not oppose

this Motion.


 /s/ Matthew Thomson
Matthew Thomson

**CERTIFICATE OF SERVICE**

I, Matthew Thomson, hereby certify that on February 28, 2022, I filed the foregoing with the Court using the CM/ECF system. This system sends notifications of such filing and service to all counsel of record.

 /s/ Matthew Thomson
Matthew Thomson